STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2020 KA 0299

STATE OF LOUISIANA

VERSUS

GREGORY SCOTT STAFFORD

*DATE OF JUDGMENT:*     **FEB 2 2 2021**

ON APPEAL FROM THE TWENTY SECOND JUDICIAL DISTRICT COURT
NUMBER 19 CR2 140748, DIVISION D, PARISH OF WASHINGTON
STATE OF LOUISIANA

HONORABLE PETER J. GARCIA, JUDGE

* * * * * *

| | |
|---|---|
| Warren L. Montgomery<br>District Attorney<br>J. Bryant Clark, Jr.<br>Assistant District Attorney<br>Covington, Louisiana | Counsel for Appellee<br>State of Louisiana |
| David Albert Weilbaecher<br>Franklinton, Louisiana | |
| Lieu T. Vo Clark<br>Mandeville, Louisiana | Counsel for Defendant-Appellant<br>Gregory Scott Stafford |

* * * * * *

BEFORE: WHIPPLE, C.J., WELCH, AND CHUTZ, JJ.

Disposition:     CONVICTION AND SENTENCE AFFIRMED; REMANDED WITH
INSTRUCTIONS.

**CHUTZ, J.**

The defendant, Gregory Scott Stafford, was charged by an amended bill of information with aggravated obstruction of a highway of commerce, a violation of La. R.S. 14:96, and pled not guilty.[1] After a trial by jury, he was found guilty as charged. The State filed a habitual offender bill of information, and the defendant initially denied the allegations therein. Subsequently, the defendant admitted to the allegations in the habitual offender bill of information in exchange for an agreed-upon sentence, was adjudicated a third-felony habitual offender, and was sentenced, as agreed, to eight years imprisonment at hard labor.[2] The trial court later denied the defendant's motions for post-verdict judgment of acquittal, new trial, and to reconsider sentence. The defendant now appeals, assigning as error the imposition of sentence prior to the ruling on the post-trial motions, the legality of the sentence, and the denial of the motion to reconsider sentence. For the following reasons, we affirm the conviction and sentence.

## STATEMENT OF FACTS

On December 13, 2018, at approximately 9:52 a.m., Deputy John O'Hern, a criminal patrol officer with the Washington Parish Sheriff's Office, was dispatched to Highway 436, to investigate a suspected hit-and-run and domestic dispute.

---

[1] The amended bill of information also charged the defendant with aggravated battery, a violation of La. R.S. 14:34, listed as count one, while the above-stated charge of aggravated obstruction of a highway of commerce was listed as count two. However, the record indicates that the case moved forward only as to count two in this case. Specifically, prior to voir dire, one of the defense attorneys inquired, "Just so we're clear, we're going only on the Count [two]?" The State replied, "Correct." Regarding count one, the State further noted, "Well, for now I'm ignoring it, only going forward, like I said, only on the aggravated obstruction of a highway count for trial purposes." Thus, at the beginning of the trial, the clerk did not read the portion of the amended bill of information consisting of count one. Prior to deliberations, the jury was instructed only as to count two. See *State v. Stevenson*, 2008-0885 (La. 1/16/09), 998 So.2d 692, 695 ("[T]he prosecutor may clearly and unequivocally state on the record before trial begins that he has elected to place defendant in jeopardy on only one of several counts...").

[2] While the sentencing transcript shows that the trial court did not impose a parole restriction, the minutes state that the sentence was imposed without the benefit of probation, parole, or suspension of sentence. The commitment order likewise states that the sentence was imposed without benefits, attaching a copy of the minutes. It is well settled that in the event of a discrepancy between the minutes and the transcript, the transcript prevails. See *State v. Lynch*, 441 So.2d 732, 734 (La. 1983). Thus, no parole restriction was imposed in this case.

2

When he arrived, Deputy O'Hern spoke to Raven Stafford, the defendant's estranged wife. She informed him that the defendant had crashed into the vehicle she was driving, removed their son from the vehicle, and fled the scene with the child. Mrs. Stafford's vehicle, a Nissan Sentra, was on the shoulder of the roadway at the time, just past Section Line Road. Deputy O'Hern was given the license plate number of the vehicle that the defendant was driving, which was identified as a white Ford truck.

Subsequently, the police were contacted by Mrs. Stafford's aunt, who informed them that she had made arrangements to meet the defendant at an area on or near Fisher Road, where the defendant agreed to give her the child. A number of officers were already in the area and proceeded to the location, as a detective remained in phone contact with the aunt. Once Mrs. Stafford's aunt indicated that the child had been placed in her physical care, the officers formed a perimeter, stopped the defendant at a stop sign, and placed the defendant under arrest.

Mrs. Stafford testified at trial, indicating that the night before the incident, she informed the defendant that she no longer wanted to be with him due to his behavior. At the time of the incident, the defendant called Mrs. Stafford as she was driving and informed her that he was behind her and that she needed to pull over and talk to him. Mrs. Stafford did not want to pull over, so she continued driving and ended the call, but the defendant repeatedly called back. As she turned on Section Line Road, a two-lane road, on the way to her grandparent's home, the defendant continued driving "closer and closer" to her vehicle, driving the white Ford truck, which belonged to his grandfather. As the defendant was tailing her vehicle "extremely close," she increased her speed and called the police. Thereafter, the defendant's vehicle ran into the back of her vehicle. Mrs. Stafford's car swerved after the "hard" impact, but she remained in control of the car, as her child began to scream. The defendant then sped up, positioned his truck

3

next to the driver's side of Mrs. Stafford's car (in the opposing lane of traffic), and hit the car again, on the driver's side, pushing it off the road into a shallow ditch. He parked his truck adjacent to the driver's door, blocking the driver's door from opening.

The defendant exited his truck, went around Mrs. Stafford's car, opened the back door, took Mrs. Stafford's cell phone out of her hand, disconnected her call with the police, took her debit card, and took the child from the backseat, unhooking the car seat from its base. The defendant warned Mrs. Stafford that if she wanted to see their son again, she would have to meet him and talk to him. The defendant put the child (still in his car seat) in his truck and drove away from the scene with the child. Mrs. Stafford further testified that a female bystander approached her, calmed her down, and explained everything to the police when they arrived.

Paula McKenzie, the bystander who approached Mrs. Stafford, also testified at trial. Ms. McKenzie stated that she was driving west on Highway 436, towards Pine Road, when two cars pulled out in front of her and ran the stop sign. She testified, "I saw a car, a four-door car, and she went off first, and then I saw a white Ford pickup kind of go out at the same time." She added, "And when she was going down the right side of the road, he was going over here and trying to get her over." She confirmed that the truck moved into the left lane (the on-coming traffic lane), as the driver was "[t]rying to swerve over to get her over off the road." After driving over an "embankment, like a little hill," Ms. McKenzie observed that the driver of the truck "had gotten the car over" on the right roadside, towards the ditch, both vehicles had stopped, and the truck was parked "[r]ight at her driver door." She further observed "a gentleman" walk around to the back of truck, around the passenger side of the car, and open the back door. She testified that at that time she saw "[l]ike a wild, hand fisting movement" into the front of the

4

car. She added, "[t]hen I saw the baby being pulled out with the car seat and him taking the baby and walking back around and … [p]ut him in his truck and took off." Ms. McKenzie did not know the defendant or Mrs. Stafford before the incident. She identified the defendant in court at trial.

## ASSIGNMENTS OF ERROR

In assignment of error number one, the defendant argues that the trial court erred in ruling on his post-trial motions, namely his motions for post-verdict judgment of acquittal and for a new trial, after imposing the sentence. The defendant states that the post-trial motions were filed on April 10, 2019,[3] prior to the habitual offender adjudication and sentencing on May 29, 2019. The trial court denied the motions on November 6, 2019,[4] at which point the defense attorney stated, "And we specifically do not waive sentencing delays, Judge." The defendant argues that as this constitutes patent error, the sentence was not validly imposed and should be vacated.

In a combined argument for assignments of error numbers two and three, the defendant notes that neither La. R.S. 14:96, the underlying statute, nor La. R.S. 15:529.1, the habitual offender statute, provide for a restriction of parole eligibility in sentencing. He contends that as the sentence includes a parole restriction, it is illegally excessive. Thus, the defendant reiterates that the sentence should be vacated.

Louisiana Code of Criminal Procedure article 821(A) mandates that a motion for post-verdict judgment of acquittal be made and disposed of before sentencing. Likewise, La. C.Cr.P. art. 853(A) mandates, in pertinent part, that a

---

[3] The copies of the post-trial motions in the record do not contain file-date stamps but show that they were signed by the judge on April 17, 2019. Consistent with the date provided by the defendant, the record index indicates that the motions were filed on April 10, 2019.

[4] As the trial court indicated, prior to the rulings on November 6, 2019, this court informed the trial court that the record did not reflect a ruling on the motions. Thus, the trial court ruled on the motions on said date.

5

motion for a new trial must be filed and disposed of before sentence. See also La. C.Cr.P. art. 873 (mandating, in pertinent part, "If a motion for a new trial ... is filed, sentence shall not be imposed until at least twenty-four hours after the motion is overruled.").[5] Therefore, the defendant is correct that the trial court erred by sentencing the defendant before ruling on the motions for post-verdict judgment of acquittal and new trial.

However, the record before us shows that the defendant implicitly waived the right to a ruling on the post-trial motions prior to sentencing and the sentencing delay. See State v. Magee, 2017-1217 (La. App. 1st Cir. 2/27/18), 243 So.3d 151, 165, writ denied, 2018-0509 (La. 2/11/19), 263 So.3d 434. Specifically, after previously denying the allegations of the habitual offender bill of information, on May 29, 2019, the date of sentencing, the defense attorney informed the trial court as follows: "Your Honor, pursuant to pretrial conference with the District Attorney, we will stipulate at this time to the multi-bill and the agreed-upon sentence of eight years." At that point, the trial court asked, "And all post-trial motions have been addressed and resolved?" The defense attorney replied, "Yes, Your Honor, they have been." The trial court then informed the defendant of his right to a hearing on the habitual offender bill of information, his right to an attorney, and his right to remain silent. The trial court further explained the offenses alleged in the habitual offender bill of information, to which the defendant individually admitted, before accepting the defendant's admissions, adjudicating him a third-felony habitual offender, and imposing the sentence.

As previously noted herein, the trial court did not impose a parole restriction, but instead initially pronounced the following sentence, "eight years

---

[5] Louisiana Code of Criminal Procedure article 873 does not explicitly require a twenty-four-hour delay in sentencing after the denial of a motion for a post-verdict judgment of acquittal. However, this court previously has applied the twenty-four-hour delay required by Article 873 to motions for a post-verdict judgment of acquittal. See State v. Coates, 2000-1013 (La. App. 1st Cir. 12/22/00), 774 So.2d 1223, 1226.

6

with the Department of Corrections." The trial court then restated the sentence as follows, "So I'm sentencing you pursuant to 15:529.1 to eight years with the Department of Corrections without benefit of probation or suspension of sentence, and you have two years from this date to file for post-conviction relief. Thank you." The defendant did not object to the near minimum sentence,[6] imposed as agreed, and did not object to the lack of a ruling on the post-trial motions or a twenty-four-hour delay, having in fact indicated that the motions had been resolved.[7]

The defendant does not challenge the sentence on appeal, except to the extent of his mistaken belief that a parole restriction was imposed. In *State v. Augustine*, 555 So.2d 1331, 1333-34 (La. 1990), the Louisiana Supreme Court indicated that a failure to observe the twenty-four-hour delay provided in Article 873 will be considered harmless error where the defendant could not show that he suffered prejudice from the violation. See *State v. White*, 404 So.2d 1202, 1204-05 (La. 1981); *Magee*, 243 So.3d at 165. In this case, in addition to the implicit waiver, the defendant has not alleged any prejudice resulting from the trial court's failure to rule on the post-trial motions prior to sentencing and observe the twenty-four-hour delay, and we have found nothing in the record to indicate that he was prejudiced. Accordingly, any error in the trial court's failure to rule on the motions for post-verdict judgment of acquittal and new trial prior to sentencing and observe

---

[6] As a third-felony offender, the defendant faced a sentencing range of seven years and six months imprisonment at hard labor to thirty years imprisonment at hard labor, with no parole restriction. See La. R.S. 14:96(B); La. R.S. 15:529.1(A)(3)(a) & (G).

[7] We also note that the defendant's motion to reconsider sentence does not make mention of the lack of a ruling on the other post-trial motions, the lack of the observance of the delay, or a purported parole restriction. As previously stated, the defendant was sentenced on May 29, 2019. According to the defendant's brief and the record index, the motion to reconsider sentence was filed prior to sentencing. The copy of the motion in the record does not contain a file-date stamp but shows that the hearing order attached to the motion was signed by an ad hoc judge on June 10, 2019, after sentencing. In his appeal brief, the defendant indicates that the motion was filed on April 23, 2019. The record index indicates the motion was filed on April 28, 2019. The motion was denied on November 6, 2019, when the other post-trial motions were simultaneously denied.

the twenty-four-hour delay is harmless beyond a reasonable doubt and does not require reversal or a remand for resentencing. See La. C.Cr. P. art. 921; *State v. Seals*, 95-0305 (La. 11/25/96), 684 So.2d 368, 380, cert. denied, 520 U.S. 1199, 117 S.Ct. 1558, 137 L.Ed.2d 705 (1997); *Magee*, 243 So.3d at 165. But we remand the case to the trial court with instructions that it amend the minute entry and commitment order to reflect that the sentence was imposed with the benefit of parole. The assignments of error lack merit.

## DECREE

For these reasons, we affirm the conviction and sentence of defendant-appellant, Gregory Scott Stafford. The matter is remanded for further proceedings in accordance with the instructions set forth in this opinion.

**CONVICTION AND SENTENCE AFFIRMED; REMANDED WITH INSTRUCTIONS.**