978 So.2d 922 (2007)
STATE of Louisiana
v.
Julian Christopher JACKS.
No. 2007 KA 0805.
Court of Appeal of Louisiana, First Circuit.
November 2, 2007.
Rehearing Denied January 17, 2008.
*923 Doug Moreau, District Attorney, Kory J. Tauzin, Assistant District Attorney, Baton Rouge, LA, for Appellee, State of Louisiana.
Marci Blaize, Baton Rouge, LA, for Defendant/Appellant, Julian Christopher Jacks.
Before WHIPPLE, GUIDRY, and HUGHES, JJ.
HUGHES, J.
Defendant, Julian Christopher Jacks, was charged by bill of information with one count of stalking, second offense, a violation of LSA-R.S. 14:40.2. Defendant originally entered a plea of not guilty. Defendant filed a motion to quash the indictment on the basis that the State was using conduct that was the subject of a previous conviction to satisfy the elements of the present charge, thereby creating a double-jeopardy violation. The trial court denied the motion to quash and defendant sought supervisory writs to this court. In State v. Jacks, 2006-2267 (La.App. 1 Cir. 1/11/07) (unpublished), this court denied defendant's writ application. The Louisiana Supreme Court also denied defendant's writ application in State v. Jacks, XXXX-XXXX (La. 1/12/07), 948 So.2d 155.
Following the denial of his writ application, defendant entered a plea of guilty pursuant to a plea agreement, and specifically reserved his right to appeal the denial of the motion to quash under State v. Crosby, 338 So.2d 584 (La.1976).
The trial court sentenced defendant to three years imprisonment and suspended all but four hundred twenty-nine days of the sentence. The trial court also ordered that upon defendant's release from incarceration, he would be placed on five years probation, with special conditions.

*924 FACTUAL BACKGROUND
In the fall of 2002, Tracy Rogillio became acquainted with defendant when the two attended Southeastern Louisiana University. The two did not date, nor did they cultivate a friendship, but on one occasion they shared a ride from Hammond to Baton Rouge. Following this event, defendant obtained Tracy Rogillio's telephone number (from a source other than Tracy) and began making harassing phone calls, including threats, which were directed at both Tracy and her roommate.
Defendant's harassing behavior also included an incident where he approached Tracy on the Southeastern campus and directed multiple expletives at her in the presence of other students. Defendant's behavior caused Tracy to become fearful of attending classes and she eventually moved out of her apartment. The State asserts that defendant also directed such behavior toward Tracy's brothers, Trey and Brandon Rogillio.
As a result of his actions toward Tracy Rogillio and her family, defendant was charged in 2003 by bill of information with two counts of stalking, violations of LSA-R.S. 14:40.2, and one count of improper telephone communications, a violation of LSA-R.S. 14:285.[1]
On December 12, 2003, defendant entered a guilty plea in docket number 9-03-152, in the Nineteenth Judicial District Court for East Baton Rouge Parish, to Count 1 of the stalking charges and the State dismissed the remainder of the charges. Defendant was sentenced to serve one year in parish prison, given credit for time served with the remainder of the sentence suspended, and placed on probation. One of the specific conditions of probation was that defendant was prohibited from any contact with the Rogillio family.
Thereafter, on July 17, 2006, Brandon Rogillio was leaving his workplace, a family-operated business in Baton Rouge, shortly after 5:00 p.m. As Rogillio was in his vehicle driving toward the exit of the parking lot, he noticed a white Ford pickup truck approach from behind his office building. The driver of the truck pulled out onto Wooddale Boulevard in such a manner as to block both lanes of traffic. Rogillio stopped his vehicle and waited. The truck reversed its position and Rogillio was able to proceed forward.
As Rogillio drove forward, the truck moved toward his vehicle. When Rogillio pulled his vehicle onto the curb to get away from the truck, he observed that the driver was defendant. Defendant stated to Rogillio that, "My name is Julian f____ Jacks and I'm back." Rogillio tried to get away from defendant, but defendant continued to follow him. According to Rogillio, defendant pulled up beside him on Airline Highway and told him he was making it worse by trying to run and that he was going to kill Rogillio's entire family. Defendant then listed members of Rogillio's family and described what he was going to do to them. After asking Rogillio where his brother was, defendant told him that he was going to "gut [Rogillio's brother] like a f____ pig." Defendant *925 continued making threats to Rogillio's family members until defendant noticed a police officer on a nearby service road at which point he left the scene.

ASSIGNMENT OF ERROR
In defendant's sole assignment of error, he contends that the trial court erred in denying his motion to quash his indictment. Defendant argues that he should not have been billed with violating LSA-R.S. 14:40.2, because the underlying facts used to prove the instant offense were the same facts under which he pled guilty at a previous proceeding, and further prosecution on these facts is contrary to the laws regarding double jeopardy.
Louisiana Revised Statute 14:40.2(A) provides:
Stalking is the intentional and repeated following or harassing of another person that would cause a reasonable person to feel alarmed or to suffer emotional distress. Stalking shall include but not be limited to the intentional and repeated uninvited presence of the perpetrator at another person's home, workplace, school, or any place which would cause a reasonable person to be alarmed, or to suffer emotional distress as a result of verbal or behaviorally implied threats of death, bodily injury, sexual assault, kidnapping, or any other statutory criminal act to himself or any member of his family or any person with whom he is acquainted. [Emphasis added.]
Harassing is defined as "the repeated pattern of verbal communications or nonverbal behavior without invitation which includes but is not limited to making telephone calls, transmitting electronic mail, sending messages via a third party, or sending letters or pictures." LSA-R.S. 14:40.2(C)(1).
The penalty provision for second offense stalking is found in LSA-R.S. 14:40.2(B)(4), which at all pertinent times provided that "[u]pon a second conviction occurring within seven years of a prior conviction for stalking, the offender shall be imprisoned with or without hard labor for not less than one hundred eighty days and not more than three years, and may be fined not more than five thousand dollars, or both."[2]
Defendant asserts that the State cannot use his prior conduct that was the subject of his 2003 guilty plea to support the "repeated" element of the present stalking charge because such would be a violation of the Double Jeopardy Clause. Defendant argues that there was no repeated act because the July 17, 2006 incident was a single incident and because his prior acts of stalking were the subject of his 2003 plea bargain, they cannot be considered relative to the current charge, under principles of double jeopardy.
In State v. Rico, 99-158, p. 5 (La.App. 3 Cir. 6/2/99), 741 So.2d 774, 777, writ denied, 99-1883 (La.12/10/99), 751 So.2d 244, the Third Circuit defined "repeated" as used in LSA-R.S. 14:40.2(A) as meaning "renewed or recurring[.]" The Rico court determined that, in that instance, defendant's actions were not sufficient to satisfy the elements of stalking. Rico was charged with a "repeated following" of the victim as opposed to a "repeated harassing" of the victim and in that case, Rico had no prior history with the victim. Rico had encountered the victim only that once *926 and had followed her on only that day. The court determined that because "repeated", as defined by Webster's Dictionary, is "renewed or recurring again and again," and Rico had encountered the victim only once, the facts did not support a stalking offense. That is not the case here. Jacks has previously been convicted of stalking the Rogillio family and "renewed" that harassment on July 17, 2006.
The Double-Jeopardy, Clause protects defendants from being punished or prosecuted twice for the same offense. U.S. Const. amend. V; LSA-Const. art. I, § 15; LSA-C.Cr.P. art. 591. Under LSA-C.Cr.P. art. 596, double jeopardy exists in a second trial only when the charge brought is: (1) identical with or a different grade of the same offense for which the defendant was in jeopardy in the first trial, or (2) based on a part of a continuous offense for which the defendant was in jeopardy in the first trial. The United States Supreme Court applies the "additional fact" test to resolve double jeopardy issues and states are constitutionally required to do the same. Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). See also United States v. Dixon, 509 U.S. 688, 696-97, 113 S.Ct. 2849, 2856, 125 L.Ed.2d 556 (1993); Brown v. Ohio, 432 U.S. 161, 166, 97 S.Ct. 2221, 2225-26, 53 L.Ed.2d 187 (1977); State v. Knowles, 392 So.2d 651, 654 (La.1980). The "additional fact" test requires that, when conduct constitutes a violation of two or more distinct statutory provisions, the provisions must be scrutinized to confirm that each demands proof of an additional fact. State v. Sandifer, 95-2226, pp. 4-5 (La.9/5/96), 679 So.2d 1324, 1328-29.
In addition, Louisiana courts utilize the "same evidence" test, which focuses upon the actual physical evidence and testimony necessary to secure a conviction. This test depends upon the proof required to convict, not the evidence actually introduced at trial. Thus, under the "same evidence" test, the court's concern is with the "evidential focus" of the facts adduced at trial in light of the verdict rendered, i.e., how the evidence presented goes to satisfy the prosecution's burden of proof. Therefore, if the evidence required to support a finding of guilt would also support a conviction for another offense, the defendant can be placed in jeopardy for only one of the two. State v. Sandifer, 95-2226 at p. 5, 679 So.2d at 1329.
As stated by the Georgia Court cf. Appeals in Daker v. State, 248 Ga.App. 657, 660, 548 S.E.2d 354, 356 (Ga.App.2001), cert. denied, 535 U.S. 1085, 122 S.Ct. 1977, 152 L.Ed.2d 1035 (2002), "stalking is, by its very nature, a cumulative crime." The Louisiana Legislature's inclusion of specified types of "repeated" behavior to define the offense of stalking is consistent with the idea that stalking is a cumulative crime.
Clearly, the Legislature sought to criminalize certain behaviors because of the impact on a victim of not only causing fear or emotional distress directly arising from the complained of acts, but the idea that if unpunished, this behavior would be likely to escalate.
We conclude that the facts in this case do not present a double jeopardy issue. By definition, stalking cannot consist of a single incident The behavior must, by definition, be recurring or renewed. However, once a pattern of behavior has been established, any subsequent act will be of a recurring or renewed nature; whether the prior acts were prosecuted or not is of no moment. It is only the subsequent act, if prosecuted, for which a defendant is placed in jeopardy.
*927 The Fifth Amendment provides that "[no person shall be] subject for the same offence to be twice put in jeopardy of life or limb." Each successive act of harassment creates a new offense for which a perpetrator could not possibly be in jeopardy until the new offense has been committed. One "new" act is enough; the statute does not require two or more new acts in order to prosecute a new offense. If the new offense is prosecuted, new facts and new evidence will necessarily be required in order to convict. Thus the prohibition against "double jeopardy" is not applicable.
CONVICTION AND SENTENCE AFFIRMED.
GUIDRY, J., dissents.
NOTES
[1] Count 1 alleged defendant stalked the victim on or about August 1, 2002 through December 31, 2002. Count 2 alleged defendant stalked the victim on or about January 1, 2003 through June 27, 2003. Count 3 alleged that on or about January 1, 2003 through June 27, 2003 defendant engaged in and instituted a telephone call or calls with the victim and therein used obscene, profane, vulgar, lewd, lascivious, and indecent language, aid threatened illegal and immoral acts with the intent to coerce, intimidate, and harass the victim, and made repeated telephone communications in a manner reasonably expected to annoy, abuse, torment, harass, embarrass, and offend the victim.
[2] While not applicable to the instant appeal, we note that LSA-R.S. 14:40.2(B)(4) was amended by 2007 La. Acts, No. 62, § 1, to raise the sentencing parameters to, "five years nor more than twenty years, without benefit of probation, parole, or suspension of sentence."