HIGGINBOTHAM, J.
*678 Defendant, Jack Conklin, was charged by bill of indictment with aggravated rape (count one), a violation of La. R.S. 14:42,[1] sexual battery of a victim younger than thirteen (count two), a violation of La. R.S. 14:43.1(C)(2), and production of pornography involving juveniles (count three), a violation of La. R.S. 14:81.1. He pled not guilty on all three counts. Defendant filed motions to suppress his identification, arrest, statements, and evidence, which were denied. After a trial by jury, defendant was found guilty as charged. The trial court denied defendant's motion for post-verdict judgment of acquittal and motion for new trial. Defendant waived sentencing delays, and the court imposed concurrent terms of life on count one, fifty years on count two, and fifty years on count three, all at hard labor, to be served without the benefit of probation, parole, or suspension of sentence. The trial court also denied defendant's motion for reconsideration of sentence. Defendant now appeals.
STATEMENT OF FACTS
Though defendant was convicted of three offenses stemming from the ongoing abuse of A.R.[2] between June 5, 2012 and February 14, 2013, defendant's first assignment of error regarding his motion to suppress involves facts stemming from a largely unrelated event occurring about seven months later. Police involvement in that later event led to a secondary investigation concluding in the indictments for which defendant was ultimately convicted. The following facts were adduced at a suppression hearing conducted on August 24, 2017.
On September 27, 2013, while at their home on Moonraker Drive in Slidell, Mr. and Mrs. Dobson witnessed a suspicious vehicle slowly and repeatedly passing and taking photographs of their home. After being alerted by their daughter that the vehicle passed by again, Mr. Dobson followed the driver, defendant, to his residence, and had a conversation with him. During their encounter at defendant's home, defendant told Mr. Dobson he had witnessed two young juveniles in the Dobsons' backyard engaging in sexual intercourse. Mr. Dobson had Mrs. Dobson bring their child over to see if defendant could identify whether or not she was one of the juveniles he claimed to have seen in the Dobsons' backyard. Defendant kept referring to her as "Zoey," despite Mrs. Dobson telling him that was not her name. Defendant told Mr. Dobson he keeps candy and toys in his truck for when he sees children, and he made several attempts to engage the Dobsons' seven-year-old daughter in conversation.
While at defendant's house, Mrs. Dobson noticed that he had children's toys and *679 bicycles in his garage, even though he had no children. Mrs. Dobson also noted that defendant told her not to worry about his photograph taking because he liked to take photographs of birds. Defendant invited her daughter, who he referred to as "Zoey," to come by any time and to come back the next day to fish and ride bicycles. Defendant told Mrs. Dobson that he knew how long the Dobsons had been at their Moonraker Drive address and that "Zoey" liked to fish. Mrs. Dobson reported defendant seemed very focused on her daughter's movements.
When the Dobsons returned home, they notified the police. Thereafter, Deputy Brett Posner of the St. Tammany Sheriff's Office ("STSO") was dispatched to the Dobsons' home. The Dobsons told Dep. Posner that their daughter had been playing outside at the time, and the driver was holding the phone out of the vehicle window and appeared to be taking pictures. Their neighbor, Mr. Bouche, corroborated the story, saying he witnessed the suspect vehicle driving past with the driver holding a phone outside of the window.
The Dobsons told Det. Posner about their conversation with defendant and gave him the address where they spoke with defendant. Also, Mrs. Dobson reported to Dep. Posner that she had been called by the Office of Child Services ("OCS") twice over the previous two days asking if she had a nine-year-old daughter named "Zoey" and informing her that there were reports of children having sex in their backyard. Det. Posner noted that the Dobsons were visibly shaken and that Mr. Bouche appeared to be alarmed or scared.
Dep. Posner left the Dobsons' home on Moonraker Drive and drove to the address given to him by the Dobsons. Upon his arrival, Dep. Posner encountered defendant and informed him of his Miranda[3] rights. Defendant waived his rights. When confronted with the allegation that he had been driving past the Dobsons' house taking photographs, defendant admitted he had driven past twice and had taken photographs. Defendant explained he was attempting to find the address of a house upon which he claimed to have made an OCS report in the weeks before. Specifically, defendant claimed to have witnessed indecent behavior between juveniles in the backyard. Defendant showed Dep. Posner the photos he had taken of the Moonraker Drive house on his phone.
After having talked about the incident with the Dobsons and their neighbor, Mr. Bouche, seeing their reactions and demeanor, along with defendant's later corroboration of some of their details, Dep. Posner found probable cause that defendant had committed the offense of stalking and arrested him.
In court, Dep. Posner identified the defendant as the man he arrested that day. Additionally, after the deputy viewed copies of the photographs recovered from defendant's phone, he Deputy Posner said the photographs were low quality and he couldn't tell whether there were children depicted in any of them.
Following defendant's arrest, STSO Detective Scott Davis went to the jail to speak with defendant regarding a pre-existing investigation. Det. Davis testified that he would have taken steps to interview defendant even had defendant only received a summons for stalking, rather than being arrested. Following that interview, Det. Davis furthered an investigation leading to the factually unrelated instant convictions. Det. Davis also testified that defendant's former employer, unprompted, contacted law enforcement in 2016 to notify *680 them that they found on his work computer photographs of defendant performing sex acts on a minor.
ASSIGNMENT OF ERROR # 1: MOTION TO SUPPRESS
In his first assignment of error, defendant contends that the trial court erred in denying his motion to suppress. Specifically, defendant argues that he was arrested for innocuous, though admittedly "creepy" behavior, and his version of events were the most accurate; therefore, there was no probable cause or reasonable suspicion of stalking to justify any police contact with him on September 27, 2013. Without that contact, defendant reasons that there would not have been the subsequent investigation, including the search warrants obtained by police, leading to the instant convictions from which he appeals. The State, highlighting the testimony of Dep. Posner and written witness statements from the Dobsons and Mr. Bouche, contends there was sufficient evidence establishing probable cause such that law enforcement would have been "grossly negligent" had the officer not arrested defendant for stalking.
The Fourth Amendment to the United States Constitution and article I, § 5 of the Louisiana Constitution protect people against unreasonable searches and seizures. Subject only to a few well-established exceptions, a search or seizure conducted without a warrant issued upon probable cause is constitutionally prohibited. See State v. Matthews, 2015-1281 (La. App. 1st Cir. 2/26/16), 191 So.3d 1080, 1083, writ not considered sub nom., State ex rel. Matthews v. State, 2016-1182 (La. 11/15/16), 209 So.3d 787. Once a defendant makes an initial showing that a warrantless search or seizure occurred, the burden of proof shifts to the State to affirmatively show it was justified under one of the narrow exceptions to the rule requiring a search warrant. La. Code Crim. P. art. 703(D). A trial court's ruling on a motion to suppress the evidence is entitled to great weight, because the district court had the opportunity to observe the witnesses and weigh the credibility of their testimony. State v. Poole, 2009-1933 (La. App. 1st Cir. 3/26/10), 2010 WL 1170634, *2 (unpublished). When a trial court denies a motion to suppress, factual and credibility determinations should not be reversed in the absence of a clear abuse of the trial court's discretion, i.e ., unless such ruling is not supported by the evidence. See State v. Green, 94-0887 (La. 5/22/95), 655 So.2d 272, 280-81 ; State v. Magee, 2017-1217 (La. App. 1st Cir. 2/27/18), 243 So.3d 151, 161. However, atrial court's legal findings are subject to a de novo standard of review. See State v. Hunt, 2009-1589 (La. 12/1/09), 25 So.3d 746, 751.
A peace officer may lawfully arrest a person without a warrant when he has reasonable cause[4] to believe that the person to be arrested has committed an offense. La. Code Crim. P. art 213(A)(3). Probable cause to arrest exists when facts and circumstances within the arresting officer's knowledge and of which he has reasonable and trustworthy information are sufficient to justify a man of average caution in the belief that the person to be arrested has committed or is committing an offense. Kennedy v. Sheriff of East Baton Rouge, 2004-0574 (La. App. 1st Cir. 3/24/05), 899 So.2d 682, 688, writ granted, *681 2005-1418 (La. 1/13/06), 920 So.2d 217, and rev'd on other grounds, 2005-1418 (La. 7/10/06), 935 So.2d 669. Although mere suspicion cannot justify an arrest, the officer does not need proof sufficient to convict. Probable cause must be judged by the probabilities and practical considerations of everyday life on which average men, and particularly average police officers, can be expected to act. Whether probable cause existed at the time of the arrest must be determined without regard to the result of the subsequent search. State v. Lumpkin, 2001-1721 (La. App. 1st Cir. 3/28/02), 813 So.2d 640, 644, writ denied, 2002-1124 (La. 9/26/03), 854 So.2d 342.
Louisiana Revised Statute 14:40.2(A) provides in pertinent part:
Stalking is the intentional and repeated following or harassing of another person that would cause a reasonable person to feel alarmed or to suffer emotional distress. Stalking shall include but not be limited to the intentional and repeated uninvited presence of the perpetrator at another person's home, workplace, school, or any place which would cause a reasonable person to be alarmed, or to suffer emotional distress as a result of verbal, written, or behaviorally implied threats of death, bodily injury, sexual assault, kidnapping, or any other statutory criminal act to himself or any member of his family or any person with whom he is acquainted.
Stalking cannot consist of a single incident; the behavior must, by definition, be recurring or renewed. State v. Jacks, 2007-0805 (La. App. 1st Cir. 11/2/07), 978 So.2d 922, 926, writ denied. 2008-0345 (La. 9/19/08), 992 So.2d 951.
In the instant case, the State set forth evidence that defendant was observed driving in front of the Dobsons' home multiple times. Defendant was seen driving slowly and taking photographs while children were outside. Mrs. Dobson presented in her statement to Dep. Posner that someone had called OCS at least twice to report allegations of child sex abuse at her residence involving a child named "Zoey," a name incorrectly and insistently used by only defendant when referring to the Dobsons' daughter. Moreover, Mrs. Dobson reported the manner in which defendant acted toward her daughter, namely, soliciting the seven-year-old to "come by any time" and providing specific details about her child that could only come from extensive surreptitious surveillance. Dep. Posner testified that the Dobsons and their neighbor, Mr. Bouche, were alarmed by defendant's behavior. While the actions taken by defendant individually are not illegal in-and-of themselves, taken as a pattern of activity, Dep. Posner reasonably viewed it as indicative of an intent to cause emotional distress in the Dobson family. Given the great discretion given the trial court's credibility determinations at trial, and that the State only need show the officer had probable cause to believe the offense had been committed, defendant fails to show an abuse of that discretion in the trial court's denial of his motion to suppress.
Further, even assuming arguendo that there was no probable cause to arrest defendant as a result of a stalking investigation, the State elicited testimony that defendant's former employer contacted the STSO sua sponte to report that defendant possessed apparent child pornography on his work computer. Additionally, Det. Davis testified defendant would have been brought to his attention had defendant only received a summons, instead of being arrested. As such, defendant and the evidence recovered in his home would have come to law enforcement's attention independently of the stalking investigation. See *682 State v. Lee, 2005-2098 (La. 1/16/08), 976 So.2d 109, 127, cert. denied, 555 U.S. 824, 129 S.Ct. 143, 172 L.Ed.2d 39 (2008). This claim is without merit.
ASSIGNMENT OF ERROR # 2: VOIR DIRE
In his next assignment of error, defendant makes two general claims. First, defendant alleges the trial court erred when it denied his challenges for cause of three different jurors, based on answers they gave. Two of the venire members at issue were police officers, and a third said he would expect to hear from defendant, that he believed child witnesses were more credible, and that he would be thinking of his own ten-year-old daughter during the proceedings. Second, defendant contends the trial court should have struck an entire panel after one juror, another former law enforcement officer, made "improper commentary." The State argues the three venire members at issue in the first claim demonstrated they were able to render judgment according to the law and that the statements made by the juror in the second issue were not of the degree as to render the remainder of the panel unable to fairly decide the case.
Under La. Code Crim. P. art. 797(2), in relevant part, a defendant may challenge a juror for cause if "[t]he juror is not impartial, whatever the cause of his partiality." A challenge for cause should be granted, even if the juror declares an ability to remain impartial, when the juror's responses reveal facts from which bias, prejudice or impartiality may be reasonably inferred. State v. Anthony, 98-0406 (La. 4/11/00), 776 So.2d 376, 392, cert. denied, 531 U.S. 934, 121 S.Ct. 320, 148 L.Ed.2d 258 (2000). A charge of juror bias may be removed if the prospective juror is rehabilitated, that is, if the court is satisfied that the juror can render an impartial verdict according to the evidence and instructions given by the court. Anthony, 776 So.2d at 392. The trial judge has broad discretion and reviewing courts will not disturb its rulings absent an abuse of that discretion. State v. Dotson, 2016-0473 (La. 10/18/17), 234 So.3d 34, 39. An appellate court grants great deference to atrial court's evaluation of juror responses and "should not attempt to reconstruct the voir dire by a microscopic dissection of the transcript in search of magic words or phrases that automatically signify the jurors' qualification or disqualification." State v. Miller, 99-0192 (La. 9/6/00), 776 So.2d 396, 405-06, cert. denied, 531 U.S. 1194, 121 S.Ct. 1196, 149 L.Ed.2d 111 (2001). However, if the judge erroneously denies a cause challenge and defendant exhausts his peremptory challenges, prejudice is presumed. See e.g. State v. Ball, 2000-2277 (La. 1/25/02), 824 So.2d 1089, 1102, cert. denied sub nom., 537 U.S. 864, 123 S.Ct. 260, 154 L.Ed.2d 107 (2002). Moreover, a defendant must use a peremptory challenge, should he still have one, on the venire member in question lest he waive the complaint on appeal. State v. Sparks, 88-0017 (La. 5/11/11), 68 So.3d 435, 460, cert. denied, 566 U.S. 908, 132 S.Ct. 1794, 182 L.Ed.2d 621 (2012).
Brian Englade
During his voir dire testimony, Englade indicated he understood that children can lie, that while he would want to testify, he understood that not everyone would want to, and that he would not find defendant guilty unless all of the elements of the offense were proven. Additionally, though Englade acknowledged that having a child "might impair" his judgment and that a child witness may start with a "little bit of veracity other people might not start with[,]" he still felt he could give defendant the same trial he would want for himself.
*683 Defendant challenged Englade for cause because he alleged that with Englade "a child would have a heads up on credibility." Defendant also argued that Englade had said having a 10-year-old daughter would "also weigh in the back of his mind, favoring the [S]tate." The trial court denied the challenge, holding it did not find Englade's "comments rise to a level of bias or prejudice on his part." Defendant objected, and later used a peremptory challenge on Englade.
Jared Lunsford
During general voir dire questioning, Lunsford explained that he worked in the major crimes unit of the St. Tammany Sheriff's Office, that he conducts his investigations in an unbiased fashion, was only acquainted with and did not work with Det. Davis, did not work on child cases, would not lend a law enforcement witness more credibility by virtue of their job, would hold the State to its burden of proof, understood that children can lie, and understood the State carries the ultimate burden at trial.
Defendant challenged Lunsford for cause, claiming his working in the same Sheriff's Office as a key witness would color his views. The court denied the challenge. Defendant did not use a remaining peremptory challenge on Lunsford as the jury panel was completed before Lunsford was called for further questioning.
Jonathan Harrison
Harrison stated he was a special agent with the United States Department of Housing and Urban Development, that his law enforcement background would not influence his decision either way, that he could detach emotions from consideration of the case, that he could hold the State to its burden, and law enforcement witnesses would not be regarded as more credible before their testimony, and he acknowledged that children can lie. Harrison also stated that while he had worked on a child pornography case as a customs agent, he would never want to work one again.
Defense counsel raised a challenge for cause, but the trial court denied it, finding Harrison's history in law enforcement alone did not rise to the level of a cause challenge. Again, defendant did not require a peremptory challenge as the jury was selected before consideration of Harrison was necessary. On that subject, however, defense counsel noted on the record he did not use up his peremptory challenges on Lunsford and Harrison in order to "[accept] one lesser evil" because of both of them being "worse" venire members.
Scott Hurley
Defendant points to statements made by venireman and former St. Bernard Sheriff's Deputy Scott Hurley that he claims tainted the entire panel, which should have been excused for cause as a result. Specifically, Hurley was asked about his prior background in law enforcement in general and his familiarity with Det. Davis in particular. Hurley acknowledged that he knew Det. Davis and that he knew Davis to be someone "that you went and learned from." Hurley said, if "[Det. Davis] brought a case up I'm going to trust him." When Hurley was asked if he was going to make any determinations before [Det. Davis] testifies he said "No. But knowing the kind of man and detective he is - Hurley was then cut off by defense counsel, who objected and moved to strike the entire panel.
Defendant claimed Hurley vouched for Det. Davis' credibility, and that by explaining he knew Det. Davis personally, the remaining panel members would similarly value his testimony more. The trial court reasoned that while Hurley may have disqualified himself as a juror, it did not *684 believe the entire panel had formed an opinion about Det. Davis' credibility. In the trial court's view, without more, there was insufficient evidence to strike the remaining panel members. At the conclusion of voir dire of that panel, the court reiterated that it had heard nothing indicating the remaining members had "some preconceived notion that a witness somehow rose to this great level of being perfect and beyond question." The State stipulated the cause challenge to Hurley.
As an initial matter, defendant did not exhaust his peremptory challenges and only one of the complained-of jurors was selected to serve on the jury. Defendant used two remaining peremptory challenges on proposed alternate jurors. As a result, defendant arguably waived his claims on appeal by failing to exhaust his peremptory challenges, notwithstanding his stated strategy of accepting a disfavored juror rather than take one of them. See Sparks, 68 So.3d at 460.
In any event, defendant fails to demonstrate how the trial court abused its considerable discretion in denying his challenges for cause. That Lunsford and Harrison were law enforcement officers is of no moment. A law enforcement officer is not automatically excluded from service by nature of his job, but rather a trial court should determine a potential juror's impartiality on a case-by-case basis. State v. Murphy, 2016-0901 (La. App. 1st Cir. 10/28/16), 206 So.3d 219, 225. The court was evidently satisfied with both Lunsford and Harrison's ability to apply the law as given and evaluate the credibility of the police officer witnesses as they would anyone else. Defendant shows nothing specific in their exchanges with the prosecutor, defense counsel, or court indicating the court's conclusions to be in error.
A district court is vested with broad discretion in ruling on challenges for cause, and these rulings will be reversed only when a review of the voir dire record as a whole reveals an abuse of discretion. State v. Smith, 2014-0456 (La. App. 1st Cir. 12/23/14), 2014 WL 7331935 *6 (unpublished). When addressing whether a challenge for cause should be granted, the district court judge must look at the juror's responses during his or her entire testimony, not just isolated answers. State v. Johnson, 2016-0514 (La. App. 1st Cir. 10/31/16), 2016 WL 6427710 *9 (unpublished), writ denied, 2016-2185 (La. 9/15/17), 225 So.3d 477. Thus, only where it appears that the judge's exercise of that discretion has been arbitrary or unreasonable, resulting in prejudice to the accused, will the ruling of the district court be reversed. See State v. Dorsey, 2010-0216 (La. 9/7/11), 74 So.3d 603, 625, cert. denied, 566 U.S. 930, 132 S.Ct. 1859, 182 L.Ed.2d 658 (2012) ; State v. Mills, 2013- 0573 (La. App. 1st Cir. 8/27/14), 153 So.3d 481, 487, writ denied, 2014-2027 (La. 5/22/15), 170 So.3d 982, and writ denied sub nom., State ex rel. Mills v. State, 2014- 2269 (La. 9/18/15), 178 So.3d 139. Given the court's discretion stemming from its ability to see and hear Englade and his responses, defendant provides nothing to this court to warrant overturning the trial court's decision.
Finally, regarding venire member Hurley, whether or not to strike a single juror or an entire panel is committed to the discretion of the trial judge. State v. Lucky, 96-1687 (La. 4/13/99), 755 So.2d 845, 853, cert. denied, 529 U.S. 1023, 120 S.Ct. 1429, 146 L.Ed.2d 319 (2000). While Hurley was excused for his statements, there were no other jurors expressing similar feelings regarding inherent officer credibility. Here, there is no support for a contention the remaining panel members could not apply the law as given, or could not be fair and impartial. See *685 Smith, 2014 WL 7331935 *6 ; State v. Cook, 598 So.2d 423, 427 (La. App. 5th Cir. 1992) ; State v. Baker, 528 So.2d 776, 779 (La. App. 3d Cir. 1988). This claim is without merit.
CONVICTIONS AND SENTENCES AFFIRMED.

Defendant was charged for an offense occurring prior to the 2015 amendment to the statute by 2015 La. Acts No. 256, § 1.

In accordance with La. R.S. 46:1844(W), the initials for minor victims will be used.

Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

The "reasonable cause" standard of La. Code Crim. P. art 213(3) is equivalent to "probable cause" under the general federal constitutional standard. To read Article 213 as allowing an arrest on less than probable cause would put the article afoul of the Fourth Amendment. State v. Caples, 2005-2517 (La. App. 1st Cir. 6/9/06), 938 So.2d 147, 154, writ denied, 2006-2466 (La. 4/27/07), 955 So.2d 684.