# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CA 20-623


**MARY BETH SELCER**

**VERSUS**

**CONNER LEE BOUDREAUX**


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20204264
HONORABLE JOHN  DAMIAN TRAHAN, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**BILLY HOWARD EZELL**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Chief Judge, Billy Howard Ezell, and D. Kent Savoie, Judges.


**REVERSED.**

**James Kirk Piccione**
**Piccione & Piccione**
**P. O. Box 3029**
**Lafayette, LA 70502-3029**
**(337) 233-9030**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Conner Lee Boudreaux**

**Mary Beth Selcer**
**In Proper Person**
**4138 Glenlake Terrace**
**Kennesaw, GA 30144**
**(404) 580-3157**

**EZELL, Judge.**

Conner Boudreaux appeals the trial court's grant of a protective order against him filed by his paternal aunt, Mary Beth Selcer. For the following reasons, we reverse.

**FACTS**

On September 1, 2020, Mary Beth filed a petition for protection from stalking against her nephew, Conner. That same day, the trial court issued a temporary restraining order. Following a September 8, 2020 hearing, an order of protection was entered, which expires on September 8, 2021. Conner then filed the present appeal.

**DISCUSSION**

Conner argues that the trial court erred in granting the protective order without sufficient evidence. He also claims the trial court erroneously admitted double hearsay evidence that was illogical and unreliable.

The Protection from Stalking Act, found in La.R.S. 46:2171 – 46:2174, was enacted to provide a civil remedy for stalking victims against perpetrators, offering immediate and easily accessible protection. La.R.S. 46:2171. Louisiana Revised Statutes 46:2172 provides, in pertinent part, that "'stalking' means any act that would constitute the crime of stalking under R.S. 14:40.2." Louisiana Revised Statutes 14:40.2(A)(emphasis added) defines stalking as:

> [T]he **intentional and repeated** following or harassing of another person that would cause a reasonable person to feel alarmed or to suffer emotional distress. Stalking shall include but not be limited to the intentional and repeated uninvited presence of the perpetrator at another person's home, workplace, school, or any place which would cause a reasonable person to be alarmed, or to suffer emotional distress as a result of verbal, written, or behaviorally implied threats of death, bodily injury, sexual assault, kidnapping, or any other

statutory criminal act to himself or any member of his family or any person with whom he is acquainted.

"Harassing" is further defined by La.R.S. 14:40.2(C)(1) as: "[T]he repeated pattern of verbal communications or nonverbal behavior without invitation which includes but is not limited to making telephone calls, transmitting electronic mail, sending messages via a third party, or sending letters or pictures." "Pattern of conduct" is then defined by La.R.S. 14:40.2(C)(2) as: "[A] series of acts over a period of time, however short, evidencing an intent to inflict a continuity of emotional distress upon the person."

"At a hearing on a protective order, the petitioner must prove the allegations of abuse by a preponderance of the evidence." *Patterson v. Charles*, 19-333, p. 10 (La.App. 4 Cir. 9/11/19), 282 So.3d 1075, 1083. "Proof is sufficient to constitute a preponderance of the evidence when the entirety of the evidence, both direct and circumstantial, shows that the fact sought to be proved is more probable than not." *Id*. (citing *Head v. Robichaux*, 18-366 (La.App. 1 Cir. 11/2/18), 265 So.3d 813).

A trial court has wide discretion in granting a protective order, which an appellate court reviews under the abuse of discretion standard. *Ned v. Laliberte*, 18-99 (La.App. 3 Cir. 6/26/19), 277 So.3d 517.

This case centers around the care of Mary Beth's mother, and Conner's paternal grandmother, who passed away the morning of the hearing. According to the testimony at the hearing, Mary Beth moved her mother to her home state of Georgia to care for her. After several months, her mother was sent back to live with Conner and his father. Conner's parents separated during the interim. Conner stated that once his grandmother was back in Louisiana, a sitter would help them

2

care for his grandmother. He also explained that Mary Beth would come for a day or two and then leave.

In her petition filed on September 1, 2020, Mary Beth alleged two incidents of stalking: one on August 20, 2020, and the other on August 31, 2020. Mary Beth alleged that on August 20, she was warned that Conner was looking for her and had plans to hurt her, so she called the New Iberia Sheriff's Office for assistance to enter her mother's house.

Conner and his mother, Donna, testified at the hearing about an event leading up to August 20. Prior to August 20, Mary Beth asked Conner to bring his grandmother to The Blake, a senior care facility in Lafayette where the grandmother would be residing. Conner's girlfriend assisted him in bringing his grandmother to The Blake. This is when Mary Beth and Conner had an exchange of words. Conner explained that she was mad at him for bringing a wheelchair instead of a walker. She also began saying things to him concerning the fact that he was adopted and not blood related and an embarrassment to the family.

Donna's testimony at trial substantiated Conner's story about the incident at The Blake. Donna testified that Conner's girlfriend taped the event showing Mary Beth yelling at Conner. Donna explained that when Conner brought the walker back, Mary Beth started yelling at him. Mary Beth told Conner that he was not blood related and an embarrassment, and that he should go look for his real family. Donna said this made Conner upset and angry with Mary Beth.

Donna further explained that when Conner's father saw the video, he told Conner that he needed to be understanding of his aunt. This led to an estranged relationship between Conner and his father. Conner's mother, a psychologist, then suggested to Conner that they go see Mary Beth to show her the video so that she

could see and acknowledge her behavior.  On August 20, Donna traveled with Conner to New Iberia to the grandmother's house where Mary Beth was located at the time.  They knocked on the door a couple of times, but there was no answer.  Conner's mother then typed up a list of the hurtful statements verbalized by Mary Beth to Conner and left it on the door.  They never saw or talked to Mary Beth.

Mary Beth testified that on August 20 she was in New Iberia cleaning out her mother's house.  She received a phone call from a friend who told her that her brother had called trying to find her because her nephew was coming to New Iberia to hurt her.  The friend told her that her brother wanted to know where she was located and let her know not to go to her mother's house.  The friend was never identified by Mary Beth and Conner's father did not testify at the hearing.  Mary Beth called the sheriff's department in New Iberia, and they came and searched the house and found no one.  Mary Beth stated that there was a letter on the door of the house.  She testified that she then went to stay at a friend's house for a few days.  This is the testimony that was objected to at trial as hearsay.  The court overruled the objection.

Subsequently, Mary Beth returned to the home where Conner and his father were living to help care for her mother, who was now on hospice care.  On August 31, Conner's paternal uncle, Brian Boudreaux, went to visit his mother.  Brian explained that his brother told him he needed to go see his mother and when he initially went to the house by himself, Mary Beth slammed the door in his face.  Donna offered to go with Brian to the house, and Conner went with them since he was still living at the house.

When they arrived at the home, Mary Beth allowed them in, but told them they could only visit for ten minutes according to hospice rules.  Shortly,

4

thereafter, things got heated. Donna testified that she told Conner to videotape Mary Beth during their visit due to her past behavior. This videotape was introduced into evidence at the hearing. Mary Beth noticed Conner filming her. As she is talking on the phone to her husband, calling the family idiots, and telling him to go ahead and video her, she approaches Conner. We cannot see what happens next. She testified she tapped the phone out of Conner's hands. He testified that she could have been aiming for the phone, but she hit him in the face. He testified he pushed her away from him. He then told her not to "dare f _ _ _ _ _ g hit me you b _ _ _ h" as he was following her. She testified that he kicked her around the house. The video just shows him following her until she turned around and told him not to touch her, at which time he used a karate kick to the back of her legs. Pictures in evidence show bruises on the back of her legs and right breast. Conner admitted he has a black belt in Taekwondo.

Conner testified that he then moved out of the house because he did not want to be around his aunt and father. This was before he was served with the protective order.

In granting the protective order, the trial court ruled that:

> Even if I accept every bit of testimony that's critical of the plaintiff, she was tyrant, she kept her other relatives away from her dying mother, she slapped this telephone out of the defendant's hand, and she did, and what's shown on the video she certainly doesn't cover herself with glory, but the fact remains is after she slapped the phone out of the defendant's hand he struck her, and then she started running, and he chased her down, and he kicked her several more times.

> I think that she needs a protective order from him because he does not know, apparently, how to resolve conflict without resorting to his martial arts training.

5

Stalking requires specific intent to inflict a continuity of emotional distress upon a person by a series of acts. *State v. Ryan*, 07-504 (La.App. Cir. 11/7/07), 969 So.2d 1268. Stalking, by its very definition, cannot consist of a single incident but must be recurring or renewed. *State v. Jacks*, 07-805 (La.App. 1 Cir. 11/2/07), 978 So.2d 922, *writ denied*, 08-345 (La. 9/19/08), 992 So.2d 951.

Even if we consider the incident on August 20 as described by Mary Beth, which Conner argues was inadmissible hearsay, we find that the trial court abused its discretion in finding that Conner was guilty of stalking. There is no evidence whatsoever that Conner intentionally and repeatedly followed Mary Beth. Although Conner's actions on August 31 were extreme and disturbing, there is no evidence that he was stalking Mary Beth. He even immediately moved out of his father's house where Mary Beth was staying while in Louisiana. She obviously was not afraid of him, as she returned to the home after August 20, knowing Conner was living there.

For the foregoing reasons, the ruling of the trial court issuing the protective order against Defendant, Conner Lee Boudreaux, is reversed, and the protective order is recalled and vacated. We assess all costs of this appeal to Mary Beth Selcer.

**REVERSED.**