# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE                                    NEWS RELEASE #032

FROM: CLERK OF SUPREME COURT OF LOUISIANA


The Opinions handed down on the **30th day of June, 2015**, are as follows:


**PER CURIAM**:


2014-K -0945        STATE OF LOUISIANA v. WILLIE JAMES ROBERTSON (Parish of
                    Lafayette)(Second Degree Murder)

                    Under these circumstances, the court of appeal correctly
                    concluded that rational jurors would necessarily have reasonable
                    doubt as to whether defendant's unauthorized presence in the home
                    was a substantial contributing factor in the victim's death, the
                    precipitating event leading to the sudden cardiac arrest that
                    killed her, and was therefore guilty of a homicide, whether
                    second degree murder or manslaughter.  The judgment of the court
                    of appeal is affirmed.
                    AFFIRMED.

                    CRICHTON, J., additionally concurs and assigns reasons.

SUPREME COURT OF LOUISIANA

No. 14-K-0945

STATE OF LOUISIANA

VERSUS

WILLIE JAMES ROBERTSON

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
THIRD CIRCUIT, PARISH OF LAFAYETTE

PER CURIAM:

In this cold-case prosecution initiated over 12 years after the victim died, the state charged defendant by grand jury indictment with second degree murder in violation of La.R.S. 14:30.1. After trial by jury, defendant was found guilty of manslaughter and sentenced to 40 years' imprisonment at hard labor. On appeal, the Third Circuit reversed defendant's conviction and sentence after finding that the evidence presented at trial did not support a verdict for either the charged offense or for its responsive verdict of manslaughter, an apparent compromise, and entered a judgment of acquittal. State v. Robertson, 13-1234 (La. App. 3 Cir. 4/2/14), 135 So.3d 1275. We granted the state's application to review the decision below. After briefing and argument and independent review of the record, we find ourselves in agreement with the court of appeal and affirm.

The victim in the present case, an 86-year-old woman, died sometime between the afternoon of Tuesday, October 6, 1999, and mid-afternoon of Wednesday, October 7, 1999, when she was found on the floor of her kitchen, with three plastic grocery bags lying just beyond reach of her outstretched hand. The home had been ransacked. A VCR and silverware had been taken, groceries removed from the plastic bags, and a wedding ring slipped off her finger. The

curtains normally open had been closed and flower pots moved from the window sill to the kitchen counter. According to one of the officers first on the scene, Sergeant Terrance Oliver with the Lafayette Police Department, "[i]t didn't look like she had any kind of trauma to her as far as physical confrontation. Nothing in the kitchen appeared to be strewn about or anything like that." The autopsy report introduced by the state attributed the cause of the victim's death to sudden cardiac arrest caused by severely narrowed coronary arteries.

In the state's theory of the case, the victim's heart simply gave out when she returned from shopping and at some point thereafter confronted an intruder in her home during the commission of an aggravated burglary. Although initial examination of the latent fingerprints on the sliding door evidently pried open with a screwdriver to provide entry, and on a blue metal found in the living room, had proved negative, reexamination of the prints in 2011 identified defendant as the person who entered the home. The state argued that the closed curtains and relocated flower pots indicated defendant was still in the home when the victim collapsed and took steps to conceal his involvement in her death. The defense argued that the state had proved only that the victim died of natural causes but otherwise failed to establish when the perpetrator entered the residence and thus failed to negate any number of reasonable alternatives, including the possibility that the unauthorized entry occurred after, not before, the victim collapsed and died on her kitchen floor.

On appeal, the Third Circuit panel found that "[w]hile the evidence may very well establish beyond a reasonable doubt that Defendant burglarized the victim's residence . . . [and] it was speculated that the burglary was in commission at the time of the victim's arrival since groceries were missing from the plastic bags, and her wedding ring was gone from her finger . . . . the State failed to eliminate beyond a reasonable doubt the very real possibility that the victim was

2

already deceased when the burglary commenced." Robertson, 13-1234 at 6, 135 So.3d at 1279. The court of appeal further observed that given the indefinite time of the victim's death within an 18-hour span, "[t]he burglar could have entered the house late afternoon, evening time, during the night, or early the next morning and availed himself of the opportunity to take whatever he wanted including groceries and the victim's wedding ring." Id.

The court of appeal thereby identified the critical flaw in the state's case. By the time of trial, the pathologist who performed the autopsy on the victim had died and the only medical evidence presented to the jury regarding the cause of the victim's death was the autopsy report. The report listed the cause of death as "Possible acute left ventricular arrhythmia, in subject with severe, up to 70% stenosing left anterior descending/right coronary atheromatosis." The pathologist had found a fresh cut on the victim's right forearm (a "mildly bleeding superficial laceration . . . without underlying fracture") corresponding to a blood stain on the arm of the blouse she had been wearing. He also found subcutaneous contusions on the victim's head (without underlying skull fracture), a contusion at the corner of her lips, and bruises on the victim's left forearm and wrist, on her lumbar spine, and on her left foot, all without underlying bone fractures. The pathologist ventured no opinion as to the ages of the contusions and bruises although he did note there was no evidence of "intermediate term (1 week-1 month old) injuries." In the final analysis, the pathologist listed the mode of death as: "Undetermined."

The state did not offer jurors any expert aid in navigating the highly technical contents of the autopsy report replete with complex medical terminology describing a variety of medical conditions appropriate to the age of the victim, including "biapical lung pleural fibrosis/fibrous adhesions/silicoanthracosis, moderate." Thus, the state did not present jurors with expert medical testimony that the fresh cut on the victim's arm and the bruising observed on her head, arms,

3

back, and foot were inconsistent with simply a fall to the kitchen floor precipitated by the heart attack, or that a 70% blockage of her heart arteries did not necessarily mean she was at imminent risk of a heart attack at any time, as opposed to cardiac arrest brought on by emotional stress in confronting an intruder in her home.

We note that convictions have been upheld in other jurisdictions when a victim dies from sudden cardiac arrest during or shortly after the commission of a crime. The results in these cases are consistent with the rule in Louisiana that while in a prosecution for murder, "the criminal agency of defendant as the cause of the victim's death must be established beyond a reasonable doubt . . . '[i]t is not essential that the act of the defendant should have been the sole cause of the death; if it hastened the termination of life, or contributed, mediately or immediately, to the death, in a degree sufficient to be a clearly contributing cause, that is sufficient.'" State v. Matthews, 450 So.2d 644, 646 (La. 1984) (quoting State v. Wilson, 114 La. 398, 38 So. 397 (1905)).

But in these cases, there was evidence or testimony that sudden cardiac arrest was precipitated by the crime. See, e.g., People v. Hamrick, 624 P.2d 1333, 1337 (Colo. Ct. App. 1979) ("The People's expert witness, the pathologist who performed the autopsy on the victim, testified that the victim, who was 46 years old, had been an epileptic since age 4, and that the cause of death was cardiac arrest resulting from an epileptic seizure induced by the trauma of the beating."); Durden v. State, 250 Ga. 325, 329, 297 S.E.2d 237, 242 (1982) ("The medical examiner testified that the cause of death was cardiac arrest caused by the victim's small coronary arteries and the stress of events before the victim's death."); Stewart v. State, 65 Md.App. 372, 385, 500 A.2d 676, 682 (1985) ("The most crucial evidence presented by the State was given by two cardiologists, Drs. Gerald Scugol and Robert S. Elliot. Dr. Scugol, a physician specializing in cardiovascular diseases, concluded that the cause of Mrs. Pizzamiglio's death was that the acute

4

emotional stress she had been subjected [during a robbery] to set into motion a chain of events that resulted in acute heart failure."); People v. McFee, 35 Mich.App. 227, 230, 192 N.W.2d 355, 356 (1971) ("The doctor testified that, in his opinion, the child experienced great fear at the time of the beating, which slowed digestion of food, particles of which became caught in the throat and triggered an automatic reflex action which, in this case, caused cardiac arrest."); Jackson v. State, 441 So.2d 1382, 1383 (Miss. 1983) ("Cause of death, according to forensic pathologist Dr. Rodrigo Galvez was cardiac arrest resulting from stress compatible with blows to Hill's head."); Commonwealth v. Evans, 343 Pa.Super. 118, 131, 494 A.2d 383, 389-90 (1985) ("The Commonwealth introduced testimony of a forensic pathologist who opined: The cause of death was due to the arteriosclerotic heart disease . . .aggravated by the robbery and the kidnapping.").

In the present case, and in the absence of any such expert testimony, jurors lacked an evidentiary basis for rejecting what amounted to an irreducible reasonable hypothesis of innocence by the defense. We have repeatedly cautioned that the due process standard of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), "does not permit a reviewing court to substitute its own appreciation of the evidence for that of the fact finder or to second guess the credibility determinations of the fact finder necessary to render an honest verdict." State v. Calloway, 07-2306, p. 10 (La. 1/21/09), 1 So.3d 417, 422. In cases of circumstantial evidence, the Jackson standard means that when a jury "reasonably rejects the hypothesis of innocence presented by the [defense], that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt." State v. Captville, 448 So.2d 676, 680 (La. 1984) (emphasis added). Nevertheless, the Jackson standard does not permit jurors 'to speculate if the evidence is such that reasonable jurors must have a reasonable doubt.'" State v. Mussall, 523 So.2d 1305, 1311 (La. 1988) (quoting 2 C. Wright, Federal

Practice & Procedure, Criminal 2d § 467 at 660-61 and n.23 (2d ed. 1982). The state's critical error here in failing to present any expert medical opinion regarding the likelihood the victim might suffer a sudden cardiac arrest while going about the routine of her life meant that jurors could only speculate as to whether the victim died from the strain imposed on her severely narrowed coronary arteries by carrying her groceries inside before her home was burglarized, or died from the shock of interrupting a burglar as he ransacked her home. By the same token, jurors could only speculate whether the intruder moved the flower pots and closed the curtains because he had just precipitated the victim's fatal heart attack or merely to conceal himself as he roamed freely about the premises after prying open the sliding doors and finding the victim lying dead on her kitchen floor.

Under these circumstances, the court of appeal correctly concluded that rational jurors would necessarily have reasonable doubt as to whether defendant's unauthorized presence in the home was a substantial contributing factor in the victim's death, the precipitating event leading to the sudden cardiac arrest that killed her, and was therefore guilty of a homicide, whether second degree murder or manslaughter. The judgment of the court of appeal is AFFIRMED.

**06/30/15**

**SUPREME COURT OF LOUISIANA**

**NO. 2014-K-0945**

**STATE OF LOUISIANA**

**VERSUS**

**WILLIE JAMES ROBERTSON**

**ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
THIRD CIRCUIT, PARISH OF LAFAYETTE**

CRICHTON, J., additionally concurs and assigns reasons.

In my view, in this circumstantial evidence case, it was incumbent upon the prosecution to present a medical doctor or forensic pathologist to opine as to the cause of death. The absence of such testimony led to the result here: a rational juror could not have found proof of guilt beyond a reasonable doubt. *See State v. Mack*, 2013-1311, p.8 (La. 5/7/14), 144 So. 3d 983, 989 (quoting *State v. Captville*, 448 So. 2d 676, 680 (La. 1984)). Even though the medical examiner in this cold case was deceased, the prosecution could have retained a qualified expert to examine the autopsy report and Certificate of Death to provide testimony regarding, *inter alia*, the cause of death, the time of death, and the cause of other injuries on the decedent's body, such that the overall evidence would exclude "every reasonable hypothesis of innocence." La. R.S. 15:438. The prosecution's failure to do so was fatal to its case.