## NOT DESIGNATED FOR PUBLICATION

## STATE OF LOUISIANA

## COURT OF APPEAL

## FIRST CIRCUIT

## 2019 KA 1684

## STATE OF LOUISIANA

## VERSUS

## MICHAEL YOUNG

*DATE OF JUDGMENT:* **JUL 2 4 2020**

ON APPEAL FROM THE SEVENTEENTH JUDICIAL DISTRICT COURT
NUMBER 564396, DIVISION A, PARISH OF LAFOURCHE
STATE OF LOUISIANA

HONORABLE JOHN E. LEBLANC, JUDGE

\* \* \* \* \* \*

Kristine M. Russell
District Attorney
Heather Hendrix
Joseph S. Soignet
Assistant District Attorneys
Thibodaux, Louisiana

Counsel for Appellee
State of Louisiana

Holli Ann Herrle-Castillo
Marrero, Louisiana

Counsel for Defendant-Appellant
Michael Young

\* \* \* \* \* \*

BEFORE: McDONALD, THERIOT AND CHUTZ, JJ.

**Disposition: CONVICTION AND SENTENCE AFFIRMED.**

**CHUTZ, J.**

The defendant, Michael Young, was charged by bill of information with simple burglary, a violation of La. R.S. 14:62. He pled not guilty. After a trial by jury, he was found guilty as charged. The trial court denied the defendant's motions for post-verdict judgment of acquittal and new trial and sentenced the defendant to twelve years imprisonment at hard labor. The defendant now appeals, assigning as error the sufficiency of the evidence to support his conviction and the alleged denial of his constitutional right to present a defense. For the following reasons, we affirm the conviction and sentence.

## STATEMENT OF FACTS

On or about June 13, 2016, around 2:00 a.m., Bobby LeBlanc, the operations manager for BJ's Country Stop stores,[1] received a call from an alarm monitoring company, informing him that the alarm was sounding for store number 3, located at 2846 Bayou Blue Road in Houma, Louisiana, in Lafourche Parish. The alarm company also alerted the Lafourche Parish Sheriff's Office (LPSO) of the sounding alarm at the store. Mr. LeBlanc, who lived nearby, arrived at the store within three or four minutes of being notified and observed that one of the glass doors had been shattered and a security bar had been broken. Mr. LeBlanc waited for law enforcement to arrive before entering the store.

Lieutenant Trent Duplantis of the LPSO responded to the alarm and entered the store through the shattered glass door. The store was in disarray, and the cash register drawer was missing. Lt. Duplantis and Mr. LeBlanc viewed store video surveillance footage that showed a black male using a bag[2] to shatter the glass door. The black male then entered the store, took the cash register drawer, and

---

[1] According to trial testimony, the LeBlanc family operated a total of four BJ's Country Stop stores owned by Darryl LeBlanc. Bobby LeBlanc and Tracy LeBlanc testified at trial.

[2] The bag, which contained a brick, was found in the middle of the store.

2

exited the store. The subject's hands and face were covered, and he was wearing a white muscle shirt and black shorts with a wide red stripe outlined in white on each side.

Tracy LeBlanc, who helped manage the BJ's Country Stop stores, was also notified that morning of the burglary at store number 3 and viewed the surveillance footage. Ms. LeBlanc downloaded the footage from the surveillance system, saved it on a compact disc, and gave the disc to law enforcement. In an attempt to find footage of the perpetrator visiting the store before the burglary,[3] Ms. LeBlanc watched surveillance footage from the day before the burglary, June 12, 2016, for store number 3. She subsequently began watching footage from the same time period for store number 1, located across the street from store number 3, but outside Houma city limits, at 2903 Highway 316 in Gray, Louisiana, in Terrebonne Parish. She ultimately discovered and downloaded footage from store number 1, depicting an individual whom she identified as the perpetrator, based on his matching description, clothing, socks, and shoes. In addition to providing law enforcement with the surveillance footage and still shots from both stores, Ms. LeBlanc also gave them the merchant copy of the credit card receipt generated at 6:56 p.m. for a gas transaction at store number 1 by the person she identified as the perpetrator. The first name of the signature on the receipt was clearly readable as "Michael," the last name appeared to start with the letter "Y," and the credit card was issued under the name Michael T. Young.

Further, Detective Stephanie Belanger of the LPSO, who was assigned to investigate the offense, determined that the vehicle depicted in the footage at store number 1, for which the gas was purchased, was registered in the defendant's

---

[3] Ms. LeBlanc testified that based on her experience from numerous prior incidents, such as burglaries, thefts, and armed robberies, perpetrators tended to go to the store before they committed the crime and often wore the same clothing later worn during the incidents.

3

name.[4] Detective Belanger viewed the surveillance footage from both stores and concluded, as did Ms. LeBlanc, that the perpetrator of the burglary was wearing the "exact same clothing" as the defendant wore the day before at store number 1. Based on the surveillance footage from both stores, the receipts for the gas transaction, and the vehicle registration, Detective Belanger obtained a warrant for the defendant's arrest for the burglary.

## ASSIGNMENT OF ERROR NUMBER ONE

In assignment of error number one, the defendant argues that the State failed to present sufficient evidence that he committed the burglary in this case. He argues that he was convicted because he was a black man who, on the night before the burglary, wore shorts similar to the ones worn by the perpetrator at the time of the burglary. The defendant claims that Ms. LeBlanc acknowledged that the shorts the defendant wore the night before were distinguishable from the shorts that the perpetrator had worn. He specifically asserts that Ms. LeBlanc testified that one pair of shorts contained black piping while the other pair did not and that they differed as to the width of the stripes. The defendant argues that Ms. LeBlanc could not conclusively testify that the same pair of shorts were shown in each video. The defendant contends that there was no other evidence linking him to the burglary, noting that there was no DNA, fingerprints, or physical evidence. The defendant argues that the perpetrator's attire was not so unique as to negate a reasonable probability of the offense being committed by another black man in Lafourche Parish with similar shorts, a white tank top, and black socks. The defendant contends that the evidence presented at trial only established that he pumped gas the evening before the burglary at the store across the street from the location of the burglary, wearing an outfit that any other number of black men

---

[4] Counsel for the defendant acknowledged at trial in opening and closing remarks and on appeal that the defendant was at store number 1, on June 12, 2016, and made the gas transaction as depicted in the surveillance footage and still shots.

4

could have worn. Thus, he argues that the State failed to connect him to the actual burglary and failed to exclude at least one "probability of innocence."

A conviction based on insufficient evidence cannot stand as it violates Due Process. See U.S. Const. amend. XIV; La. Const. art. I, § 2. In reviewing claims challenging the sufficiency of the evidence, viewing the evidence in the light most favorable to the prosecution, an appellate court must determine whether any rational trier-of-fact could have found the essential elements of the crime and the defendant's identity as the perpetrator of that crime beyond a reasonable doubt. **Jackson v. Virginia**, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). See also La. Code Crim. P. art. 821(B); **State v. Ordodi**, 2006-0207 (La. 11/29/06), 946 So.2d 654, 660; **State v. Cockerham**, 2017-0535 (La. App. 1st Cir. 9/21/17), 231 So.3d 698, 703, writ denied, 2017-1802 (La. 6/15/18), 245 So.3d 1035. The **Jackson** standard of review, incorporated in Article 821, is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. **State v. Legaux**, 2019-0075 (La. App. 1st Cir. 9/27/19), 288 So.3d 791, 794.

When analyzing circumstantial evidence, La. R.S. 15:438 provides that the factfinder must be satisfied that the overall evidence excludes *every reasonable hypothesis of innocence.* **State v. Patorno**, 2001-2585 (La. App. 1st Cir. 6/21/02), 822 So.2d 141, 144. When a case involves circumstantial evidence and the trier-of-fact reasonably rejects the hypothesis of innocence presented by the defense, that hypothesis falls, and the defendant is guilty unless there is another hypothesis that raises a reasonable doubt. **State v. Robertson**, 2014-0945 (La. 6/30/15), 172 So.3d 616, 619; **State v. Dyson**, 2016-1571 (La. App. 1st Cir. 6/2/17), 222 So.3d 220, 228, writ denied, 2017-1399 (La. 6/15/18), 257 So.3d 685.

Simple burglary is the unauthorized entering of any dwelling, vehicle, watercraft, or other structure, movable or immovable, or any cemetery, with the

5

intent to commit a felony or any theft therein, other than as set forth in La. R.S. 14:60. La. R.S. 14:62(A). To be guilty of simple burglary, a defendant must have the specific intent to commit a felony or theft therein at the time of his unauthorized entry. **State v. Godbolt**, 2006-0609 (La. App. 1st Cir. 11/3/06), 950 So.2d 727, 730. Specific criminal intent is defined as the state of mind that exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1). Though intent is a question of fact, it need not be proven as a fact. It may be inferred from the circumstances of the transaction. Thus, specific intent may be proven by direct evidence, such as statements by a defendant, or by inference from circumstantial evidence, such as a defendant's actions or facts depicting the circumstances. Specific intent is an ultimate legal conclusion to be resolved by the factfinder. **State v. Allen**, 2005-1622 (La. App. 1st Cir. 3/29/06), 934 So.2d 146, 152-53.

The State bears the burden of proving the elements of the offense, along with the burden of proving the identity of the defendant as the perpetrator. **State v. Draughn**, 2005-1825 (La. 1/17/07), 950 So.2d 583, 593, cert. denied, 552 U.S. 1012, 128 S.Ct. 537, 169 L.Ed.2d 377 (2007). When the key issue is the defendant's identity as the perpetrator, rather than whether the crime was committed, the State is required to negate any reasonable probability of misidentification. **State v. Johnson**, 99-2114 (La. App. 1st Cir. 12/18/00), 800 So.2d 886, 888, writ denied, 2001-0197 (La. 12/7/01), 802 So.2d 641. A positive identification by only one witness is sufficient to support a conviction. **State v. Weary**, 2003-3067 (La. 4/24/06), 931 So.2d 297, 311, cert. denied, 549 U.S. 1062, 127 S.Ct. 682, 166 L.Ed.2d 531 (2006) (quoting **State v. Neal**, 2000-0674 (La. 6/29/01), 796 So.2d 649, 658, cert. denied, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002)); **State v. Davis**, 2001-3033 (La. App. 1st Cir. 6/21/02), 822

6

So.2d 161, 163. It is the factfinder who weighs the respective credibility of the witnesses, and this court generally will not second-guess those determinations. See **State v. Hughes**, 2005-0992 (La. 11/29/06), 943 So.2d 1047, 1051.

In this case, the State introduced four video clips, which were played for the jury, and still shots from the surveillance footage taken by cameras positioned at four different angles. The video clips collectively contain footage of the perpetrator as he paced outside before entering the store, as he gained entry, as he was behind the counter removing the cash register drawer, and as he exited through his point of entry and fled from the store. The subject had what appeared to be black socks covering his hands, and he used his right hand to break the glass door and security bar with the bag containing a brick. As the perpetrator fled from the store with the cash register drawer, he ran towards the Terrebonne Parish line.

After the instant burglary, Ms. LeBlanc watched surveillance footage for store number 3, attempting to determine if the perpetrator visited the store the day before the break-in. Since she did not find any footage for store number 3 that included an individual who fit the description of the perpetrator, Ms. LeBlanc went across the street to store number 1 and viewed surveillance footage for that store. At that point, she found the footage of the person who she believed to be the perpetrator of the burglary at issue. In identifying the individual depicted in the footage of store number 1 as the perpetrator, Ms. LeBlanc testified that the individuals had the "[s]ame description, same clothing, same socks, they were just on his feet and not his hands, same shorts, same shoes."

On cross-examination, Ms. LeBlanc confirmed that she was able to see that the perpetrator in the footage from store number 3 was black, but could not see his face because it was covered, and did not see any jewelry, watch, or tattoos on his arms. Ms. LeBlanc further confirmed that some of the views of the shorts in the footage and still photos had visible details that could not be seen from other angles,

7

such as the width of the red stripe on each side and "a very thin black line" around the white stripe that outlined the red area on the shorts. Ms. LeBlanc was shown still shots from both stores and asked if she could conclusively state that the shorts being worn on June 12, 2016, in store number 1, were the same pair of shorts being worn by the perpetrator on June 13, 2016, in store number 3. She responded, "I mean it's different angles, but I mean, if – I would have got different camera shots if I would have known it would have went to [trial] to make sure a hundred-ten percent."

When Ms. LeBlanc was later re-called by the defense, she was asked to provide the basis for her identification and stated, "The features, the clothing, particularly the shorts look the same." She added, "It's the pattern on the side. It's the same coloring, the same – just it looks identical." When asked if there were any other physical characteristics that she could note, she stated, "The white shirt, the race of the guy. It just looks like him." When asked what was distinctive about his complexion, she stated, "[i]t's dark."

Detective Belanger confirmed that the surveillance footage of store number 1 showed the defendant using his right hand to sign the credit card receipt for the gas transaction, just as the perpetrator of the burglary used his right hand to shatter the glass door with the bagged brick. On cross-examination, Detective Belanger was similarly questioned as to her conclusion that the person depicted in the surveillance footage at store number 1 on June 12, 2016, identified as the defendant, was also the perpetrator of the burglary on June 13, 2016, depicted in video footage of store number 3. Specifically, she was asked if the identification was based on the shorts and stated, "The whole outfit, but the shorts were distinctive, yes." She added, "White shirt, he had the black shorts with the red and white. In the second video he had black socks on his feet but in the first they were on his hands." She denied noticing any particular physical characteristics.

The trier-of-fact is free to accept or reject, in whole or in part, the testimony of any witness. **State v. Major**, 2019-0621 (La. App. 1st Cir. 11/15/19), 290 So.3d 1205, 1212. Unless there is internal contradiction or irreconcilable conflict with the physical evidence, the testimony of a single witness, if believed by the factfinder, is sufficient to support a factual conclusion. **State v. Marshall**, 2004-3139 (La. 11/29/06), 943 So.2d 362, 369, cert. denied, 552 U.S. 905, 128 S.Ct. 239, 169 L.Ed.2d 179 (2007). It is not the function of an appellate court to assess credibility or reweigh the evidence. Appellate review for minimal constitutional sufficiency of evidence is a limited one restricted by the standard developed in **Jackson**. **State v. Rosiere**, 488 So.2d 965, 968 (La. 1986); **Godbolt**, 950 So.2d at 730.

Herein, the jury viewed the surveillance footage and still shots from both stores and did not merely rely on the testimony presented by the store managers and the officers in this case. The jury apparently rejected the defendant's hypothesis of innocence that, although he was observed at store number 1, he did not commit the burglary that subsequently occurred during the early morning hours at store number 3, across the street. In reviewing the evidence presented at trial, including the video surveillance footage and still shots from both stores, we cannot say that the jurors' determination was irrational under the facts and circumstances presented to them. See **Ordodi**, 946 So.2d at 662. While defense counsel painstakingly attempted to elicit testimony distinguishing the shorts visible in the surveillance footage from both stores, the footage and still shots clearly depict matching attire, including the white shirt and the black, white, and red shorts, and a matching physical appearance (*i.e.*, same build, stature, and complexion) such that there was no reasonable probability of misidentification in this case.

An appellate court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the factfinder and thereby overturning a verdict

on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the jury. See **State v. Calloway**, 2007-2306 (La. 1/21/09), 1 So.3d 417, 418 (per curiam). A court of appeal impinges on a factfinder's discretion beyond the extent necessary to guarantee the fundamental protection of due process of law in accepting a hypothesis of innocence that was not unreasonably rejected by the factfinder. See **State v. Mire**, 2014-2295 (La. 1/27/16), 269 So.3d 698, 703 (per curiam). After a thorough review of the record, we are convinced that a rational trier-of-fact, viewing the evidence presented in the light most favorable to the State, could find that the State proved beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, all of the elements of simple burglary and the defendant's identity as the perpetrator.

We find that assignment of error number one lacks merit.

## ASSIGNMENT OF ERROR NUMBER TWO

In assignment of error number two, the defendant argues that the trial court violated his constitutional right to present a defense by not allowing him to show his arm tattoos to the jury. He argues that his arm tattoos would have proven to the jury that he was not the person depicted in the video burglarizing store number 3. The defendant notes that the trial court ruled that his tattoos were inadmissible because a foundation had not been laid for their admissibility. The defendant further notes that the trial court subsequently refused to allow the defense to present the testimony of two witnesses, who were located by defense counsel after the trial court's previous ruling. The defendant argues that the two disallowed witnesses could have laid a foundation for the display of his tattoos to the jury. The defendant contends that the proposed testimony of the two witnesses was not in violation of the rules of discovery or otherwise required to be excluded. In that regard, the defendant notes that prior to the ruling by the trial court that the defendant's tattoos could not be shown to the jury absent a proper foundation, the

10

defense had no idea that it would need to call these witnesses and, therefore, could not have given the State pretrial notice of their names and dates of birth.

Finally, the defendant argues that the State misinterpreted **State v. Pettus**, 11-861 (La. App. 5th Cir. 5/22/12), 96 So.3d 584, 592, writ denied, 2012-1405 (La. 1/11/13), 106 So.3d 546. Specifically, the defendant argues that **Pettus** does not stand for the proposition that evidence of a tattoo is not relevant unless the State made the presence of a tattoo at issue in its case-in-chief. In arguing that he should have been allowed to show the jury his tattoos even though the State's case-in-chief did not make the presence of a tattoo an issue at trial, the defendant notes that a defense is not a rebuttal. The defendant further contends that the proffered testimony of his two potential witnesses showed that they had known the defendant since 2015, and that he had visible tattoos covering his body at the time of the burglary. The defendant argues that because the perpetrator of the burglary in the video did not have visible tattoos covering his body, the issue of the tattoos became relevant. The defendant concludes that, if the jury had been allowed to compare his arms, covered in tattoos, to the arms of the individual in the video, who "had at most one single tattoo," the verdict likely would have been different.

The Sixth and Fourteenth Amendments of the United States Constitution and Article I, § 16 of the Louisiana Constitution guarantee the criminally accused a meaningful opportunity to present a complete defense. See **State v. Blank**, 2004-0204 (La. 4/11/07), 955 So.2d 90, 130, cert. denied, 552 U.S. 994, 128 S.Ct. 494, 169 L.Ed.2d 346 (2007). Constitutional guarantees do not assure the defendant the right to the admissibility of any type of evidence, only that which is deemed trustworthy and has probative value. **State v. Governor**, 331 So.2d 443, 449 (La. 1976); **State v. Magee**, 2017-1217 (La. App. 1st Cir. 2/27/18), 243 So.3d 151, 163, writ denied, 2018-0509 (La. 2/11/19), 263 So.3d 434.

11

"Relevant evidence" is evidence that has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than without the evidence. La. Code Evid. art. 401. In deciding the issue of relevancy, the trial judge must determine whether the evidence bears a rational connection to the fact at issue in the case. **State v. Williams**, 341 So.2d 370, 374 (La. 1976); **State v. Harris**, 2011-0779 (La. App. 1st Cir. 11/9/11), 79 So.3d 1037, 1046. Except as limited by the Louisiana Code of Evidence and other laws, all relevant evidence is admissible and all irrelevant evidence is inadmissible. La. Code Evid. art. 402. Although relevant, evidence may nonetheless be excluded if the probative value is substantially outweighed by its prejudicial effect. See La. Code Evid. art. 403.

Thus, the right to present a defense does not require the trial court to admit irrelevant evidence or evidence with such little probative value that it is substantially outweighed by other legitimate considerations. **State v. Nixon**, 2017-1582 (La. App. 1st Cir. 4/13/18), 250 So.3d 273, 280, writ denied, 2018-0770 (La. 11/14/18), 256 So.3d 290 (citing **State v. Coleman**, 2014-0402 (La. 2/26/16), 188 So.3d 174, 197, cert. denied, ___ U.S. ___, 137 S.Ct. 153, 196 L.Ed.2d 116 (2016)). The trial court is vested with broad discretion in determining whether evidence is relevant or, even if relevant, has such little probative value that it is substantially outweighed by other considerations. See La. Code Evid. art. 403. A trial judge's determination regarding the relevancy and admissibility of evidence will not be overturned on appeal absent a clear abuse of discretion. **State v. Thompson**, 2015-1518 (La. App. 1st Cir. 4/15/16), 2016 WL 1535160, at *6, writ denied, 2016-762 (La. 4/13/17), 216 So.3d 793.

Herein, outside the presence of the jury, in anticipation of the defense requesting to allow the defendant to display his tattoos to the jury, the State argued that the defendant's tattoos had no bearing on the case. The State noted that the

defendant already admitted to being featured in the surveillance footage of the gas transaction and noted that the admitted footage of him did not show any markings or tattoos on his arms. The State argued that the defendant could have gotten tattoos after the offense. In response, defense counsel noted that the defendant has a dark complexion and that his tattoos do not show up, noting that they attempted to enhance and enlarge photos and were unable to get a good picture of his tattoos because of the color of his skin. At that point, the trial court sustained the State's anticipatory objection, noting that procedurally, there was an issue with the defendant "doing anything" during the State's case-in-chief. The trial court further found that the defendant's tattoos at the time of the trial would not be relevant to his condition at the time of the offense. The court concluded that it would be for the jury to compare the individual depicted in the two sets of surveillance footage from the stores captured within a twenty-four-hour period. Finally, the trial court noted concern as to whether the defendant would be subject to cross-examination, should he display his tattoos as evidence.

In a later conference in chambers, defense counsel presented the trial court with a Louisiana Supreme Court case, **State v. Martin**, 519 So.2d 87 (La. 1988). In **Martin**, the defendant was convicted of aggravated rape, aggravated crime against nature, and aggravated battery. The primary issue in the case was whether the defendant was the rapist. The victim testified that the man who attacked her had a tattoo on his right upper arm that "said something like 'Angela,'" and "had some loops in it." **Martin**, 519 So.2d at 87. In response to this testimony, the defendant asked to be permitted to display his arms to the jury, for the apparent purpose of demonstrating that he did not have a tattoo that matched the victim's description, but that he did have noticeable tattoos on his arms of a type that had not been observed by the victim on her assailant. The trial judge ruled that the defendant could display his arms to the jury, but that if he did so, the State would

be permitted to cross-examine him on the origin of any tattoos that were on his arms, and on whether he had ever had any tattoos removed. Rather than exposing the defendant to cross-examination in this fashion, defense counsel opted not to have his client display his arms to the jury. **Martin**, 519 So.2d at 87.

On appeal, this court found that while it is "well settled" that an identifying tattoo on a defendant's body is "demonstrative rather than testimonial evidence," such evidence is only admissible when it is material. Noting that the trial judge is vested with wide discretion in determining whether evidence is relevant, this court concluded that the court's ruling on the tattoo issue was not an abuse of discretion: "Because body tatoos [sic] are subject to alteration, the trial court properly limited their display absent some foundation as to origin." **State v. Martin**, 509 So.2d 160, 166 (La. App. 1st Cir.), reversed, 519 So.2d 87 (La. 1987).

The Louisiana Supreme Court reversed, finding that the trial judge erred in holding that defendant would be subject to "limited" cross-examination if he chose to display his tattoos to the jury. The Court found that such a display would not have constituted testimony by the defendant, and, thus, there would have been no waiver of his privilege against self-incrimination. **Martin**, 519 So.2d at 91-92. The Court indicated that this court correctly noted that a tattoo display by the defendant would constitute demonstrative, rather than testimonial evidence. However, the Court found that the victim's testimony alone constituted a sufficient evidentiary foundation to allow the defendant to display his arms to the jury. The Court further noted that various defense witnesses testified that, to their knowledge, Martin did not have a tattoo that matched or was similar to the one described by the victim, that he had never had a tattoo removed, that he had a number of tattoos on his person, and that he had obtained those tattoos years ago. The Court found that the additional testimony further established a relevance foundation for the proposed tattoo display in that case. **Martin**, 519 So.2d at 92.

In the instant case, in response to defense counsel's reliance on **Martin**, the State argued that the facts in **Pettus** were more pertinent to the facts present herein. In **Pettus**, the defendant was convicted of simple robbery. Identification was the primary issue in **Pettus** because no one positively identified the defendant as the robber, and the case against him was circumstantial. Therefore, as the appellate court noted, it would have been relevant if he had a tattoo on his right forearm at the time of the robbery that was not, but could have been, seen by the victim during the robbery. **Pettus**, 96 So.3d at 592.

In **Pettus**, comparing the facts therein to the facts before the Louisiana Supreme Court in **Martin**, the Fifth Circuit Court of Appeal found that the trial judge did not err by denying Pettus' request to show his tattoo to the jury, because, unlike **Martin**, the defense did not lay the proper foundation. The **Pettus** court noted that there was no evidence introduced at trial that showed Pettus had the tattoo in question at the time of the robbery, or that the tattoo would have been reasonably visible or noticeable by the victim. **Pettus**, 96 So.3d at 592-93. The detective therein testified at trial that he was aware that Pettus had a tattoo of a phrase on his upper arm, although he did not take note of or observe any tattoo on his forearms. However, none of the witnesses, including the detective, testified as to what that tattoo on his upper arm depicted or said, when Pettus had acquired that tattoo, or whether he had it at the time of the robbery. **Pettus**, 96 So.3d at 593. Unlike **Martin**, the victim in **Pettus** did not put the existence of the tattoo at issue nor did Pettus demonstrate, at trial, the relevance of the tattoo in connection with his identity as the perpetrator. The victim therein testified that she did not see any identifying marks on the suspect such as tattoos or cuts. Further, it was never proven whether the tattoo would have been reasonably visible to or noticeable by her. Thus, the appellate court found that the trial court properly excluded the tattoo evidence. **Pettus**, 96 So.3d at 593-94.

15

In this case, the trial court agreed with the State's position and found **Pettus** was applicable to the facts presented herein. The trial court later stated:

> This is a case that's unusual because there's not a victim in here that's identifying the defendant by particular markings or tattoos. **This is an entirely recorded incident where the jury can see exactly what happened and exactly who did it, and they can compare a second set of images for distinction between the two individuals.** It's their determination of the facts. The argument of counsel is not evidence. [Emphasis added.]

Thus, in denying the defendant's request to display his tattoos to the jury, the trial court emphasized the fact that the jury had the opportunity to view the defendant in the second surveillance video from store number 1 and to compare him to the perpetrator shown in the video of the burglary of store number 3. The defendant's arms were clearly visible in the second video, allowing the jury to observe any similarities or dissimilarities between the defendant and the perpetrator.

The defendant filed a supervisory writ application with this court seeking review of the trial court's ruling, which this court denied. See **State v. Young**, 2018-1018 (La. App. 1st Cir. 7/26/18) (unpublished writ action).[5] The trial court allowed the defendant to proffer the testimony of two witnesses, who both testified that they knew the defendant before the offense and that he had tattoos all over his body. However, the witnesses were not shown any of the surveillance footage or questioned as to whether the defendant's tattoos would have been visible on the video of the burglary. Moreover, one of the witnesses, Christshonda Norman, confirmed that the defendant's tattoos were not in color. She specifically stated, "They're all dark. They're all black."

---

[5] Although a pretrial determination does not absolutely preclude a different decision on appeal, judicial efficiency demands that this court accord great deference to its pretrial decisions unless it is apparent, in light of a subsequent trial record, that the determination was patently erroneous and produced an unjust result. See **State v. Humphrey**, 412 So.2d 507, 523 (La. 1982) (on rehearing); **State v. Patterson**, 2008-0416 (La. App. 1st Cir. 9/26/08), 995 So.2d 38, 40. The record before us on appeal, as discussed herein, does not show that this court's previous ruling was patently erroneous or produced an unjust result.

We note that during her trial testimony, Ms. LeBlanc confirmed that she did not see any jewelry, watch, or tattoos on the arms of the perpetrator in the still photos. When asked again about tattoos or physical markings on his arms from a different view, Ms. LeBlanc responded, "I see something on his right arm. I don't know if it's on him or just something with the camera." Regarding the possibility of distinctive characteristics visible in the still shots, she later stated, "If you're referring to tattoos, it's on the video footage. You can see something, like an outline." Detective Belanger denied seeing any tattoos in her review of the video footage.

Further, we note that, while the defendant proffered the testimony of the two witnesses in an attempt to lay a foundation for the display of his tattoos, he did not proffer any photos of his arms such that this court could view the tattoos that he wished to display to the jury. See La. Code Evid. art. 103(A)(2). Moreover, we agree with the trial court's assessment in this case. We find that the trial court did not abuse its discretion in denying the defendant's request to display the tattoos on his arms to the jury, particularly since the jury had the opportunity to observe the defendant's arms in the surveillance video from store number 1. Accordingly, we find no violation of the defendant's constitutional right to present a defense in this case. Thus, assignment of error number two is without merit.

**CONVICTION AND SENTENCE AFFIRMED.**

17